**EXHIBIT A**

SETTLEMENT AGREEMENT, RELEASE, AND WAIVER

**THIS SETTLEMENT AGREEMENT, RELEASE, AND WAIVER** (the "*Agreement*") is executed as of this ____ day of December, 2017. It is intended to resolve any and all differences and disputes between Echo 24. Inc., Tony Gunter (together, "*Employers*"), and Joseph Freitas and Jacob Rankin (together, "*Employees*"), arising out of the relationship between Employees and Employers and out of any and all other events which have occurred on or before the date of this Agreement.

**RECITALS:**

Employees were employed by Echo 24, Inc. Employees filed a lawsuit against Employers in the United States District Court for the Southern District of Ohio, 17-cv-06, alleging, among other things, that they were not paid overtime in accordance with the Fair Labor Standards and Ohio's wage and hour laws, and Employers counterclaimed against Jacob Rankin for repayment obligations pursuant to a training agreement (the "*Lawsuit*"). Tony Gunter is the President of Echo 24, Inc., and Employees alleged that Tony Gunter was an "employer" for purposes of the Fair Labor Standards Act. Employers deny any and all liability in connection with the Lawsuit. Tony Gunter specifically denies that he employed Employees, and the references herein to "Employers" is for convenience, only.

Employees and Employers now desire to resolve all matters arising out of or related to Employees' relationship with Employers and the Lawsuit, including the claims asserted by Plaintiffs and the Counterclaim asserted by Employers. In order to do so, Employees and Employers agree as follows:

1. **Consideration**.  In consideration of the release and waiver set forth in section 2 of this Agreement and the other promises set forth in this Agreement, and constituting payment for any and all allegations of any kind whatsoever, and in lieu of any and all other amounts of any nature and description, Employers shall pay Employees a lump sum payment of $3,000.00 (three thousand dollars) (the "*Settlement Amount*"), issued as follows:

    (a)  The Settlement Amount will be paid within five (5) business days after and is expressly contingent upon Court appraisal of this Agreement and Court-approval of this Agreement.

    (b)  The Settlement Amount will be paid as follow:

    i. Employers shall issue two (2) checks to Jacob Rankin as follows: One check in the gross amount of Two Hundred Thirty Seven Dollars and Twenty Five Cents ($237.25), less legally required deductions, representing alleged wage damages and Employers will issue an IRS Form W-2 for this payment. A second check in the gross amount of Two Hundred Thirty Seven Dollars and Twenty Five Cents ($237.25) representing alleged liquidated damages from which no deductions shall be made and Employers will issue an IRS Form 1099 for this payment.

    ii. Employers shall issue two (2) checks to Joseph Freitas as follows: One check in the gross amount of Two Hundred Thirty Seven Dollars and Twenty Five Cents ($237.25), less legally required deductions,

    representing alleged wage damages and Employers will issue an IRS Form W-2 for this payment. A second check in the gross amount of Two Hundred Thirty Seven Dollars and Twenty Five Cents ($237.25) representing alleged liquidated damages from which no deductions shall be made and Employers will issue an IRS Form 1099 for this payment.

  iii. Employers shall issue a check to Contreras Law, LLC in the amount of Two Thousand and Fifty One Dollars and Zero Cents ($2,051.00) representing attorney's fees and costs from which no deductions shall be made and Employers will issue an IRS Form 1099 for this payment.

These payments represent satisfaction and payment of any and all monies purportedly due and owing to Employees arising out of or relating in any way to the Employees' relationship with Employers and the Lawsuit.

Employees agree to and hereby does indemnify and hold Employers harmless against any and all tax liabilities, interest and penalties that Employers may incur as a result of not withholding taxes on money paid pursuant to this section 1 other than any liability from Employers' shares of any FICA tax obligations. Within thirty (30) days after Employers or any other agency notifies Employees that Employers have incurred any such liabilities for federal or state income tax, social security tax, federal or state unemployment or disability taxes, interest and/or penalties, Employees shall pay to Employers an amount equal to the liability, interest and/or penalties incurred by Employers.

  2. **Release and Waiver**. With respect to any and all events of any nature or description whatsoever, occurring from the beginning of time through the date of this Agreement:

  (a) Employees hereby release and forever discharge Employers and all entities related to or affiliated with Employers, the shareholders, directors, officers, employees, agents, insurers, and parties in interest with Employers and their related and affiliated entities (all of the foregoing being referred to collectively in this Agreement as the "***Employer Released Parties***")*,* from any and all claims, demands, and causes of action of any nature whatsoever; including, among other things, claims based on the legal theories of wrongful or unjust termination, breach of contract (express or implied), promissory estoppel, negligent or intentional (tortious) conduct, negligent or intentional infliction of emotional distress, defamation, breach of any implied covenant of good faith and fair dealing, and any and all forms of employment discrimination, retaliation, wrongful termination, and/or wrongful employment practice, including discharge in violation of public policy, all claims of any nature related to or concerning Employees' employment, including and claims underlying or related to the Lawsuit, and including claims for attorney fees, expenses and costs related to any of the foregoing other than those obligations provided in this Agreement;

  (b) Employees hereby release and forever discharge the Employer Released Parties from any and all claims, demands, and causes of action, and waive any rights he may have, under the Fair Labor Standards Act, Ohio's wage and hour laws and employment laws, Title VII of the Civil Rights Act of 1964, under 42 U.S.C. §1981, under

2

9673680.1

the Age Discrimination in Employment Act ("**ADEA**")*,* under the Americans With Disabilities Act, under the Family and Medical Leave Act of 1993, under the Civil Rights Attorney's Fees Awards Act of 1976, under Chapter 4112 of the Ohio Revised Code, and under any other federal, state, or local statute prohibiting discrimination and/or retaliation in employment, or to request that a lawsuit be instituted pursuant to 29 U.S.C. §206(d);

(c) Employees acknowledge that payment of the Settlement Amount satisfies any outstanding claim of Employees to wages, commissions, bonuses, vacation, and expenses etc. due as of the date of this Agreement. Employees agree and understand that payment of the Settlement Amount is more than any payments or benefits due to them under Employers' policies or practices; and,

(d) Employees agree not to institute a lawsuit with respect to any matters released or any rights waived in this Agreement.

(e) It is understood and agreed that nothing contained in this Agreement is intended to affect Employees' right to file an administrative charge with the Equal Employment Opportunity Commission ("**EEOC**"), subject to the restriction that if any such charge is filed, Employees agree not to seek or in any way obtain or accept any monetary award, recovery, settlement, or relief therefrom. Nothing in this Agreement shall prevent Employees from filing a legal action to challenge the validity of this Agreement or to otherwise pursue any claim that by law Employees cannot waive. Employees further agree that should any class or collective action lawsuit in which they may be a participant be brought against Employers, they will opt-out of (or refrain from opting-in to) the class or collective action.

(f) Employers hereby release and forever discharge Employees from any and all claims, demands, and causes of action of any nature whatsoever, including all claims of any nature related to or concerning Employees' employment with Employers and the Lawsuit, including the Counterclaim asserted against Jacob Rankin for repayment obligations pursuant to a training agreement, and including claims for attorney fees, expenses and costs related to any of the foregoing.

(g) Employers agree not to institute a lawsuit with respect to any matters released or any rights waived in this Agreement.

3. **Medicare Waiver**.

(a) Employees declare and expressly warrant that they are not Medicare eligible and not 65 years of age or older, are not suffering from end stage renal failure, and are not within 30 months of becoming Medicare eligible, and have not received Social Security benefits for 24 months or longer, have not applied for Social Security disability benefits, and are not presently appealing from a denial of Social Security disability benefits.

(b) Employees agree and affirm that, to the best of Employees' knowledge, no Medicare conditional payments or liens of any governmental entities exist.

3

9673680.1

(c) Employees agree to release, hold harmless, and indemnify Employers for any costs or penalties resulting from Employees' failure to disclose their status as a Medicare beneficiary.

(d) Employees shall be solely liable for any and all costs, penalties, claims, or the like resulting from Employees' failure to disclose their status as a Medicare beneficiary.

(e) Employees waive any claims for damages, including a private cause of action provided under 42 U.S.C. §1395y(b)(3)(A), should Medicare deny coverage for any reason.

(f) Employees affirm, covenant, and warrant that Employees have made no claim for illness or injury against Employers, nor are Employees aware of any facts supporting any such claim against Employers. Employees acknowledge that no Medicare set aside allocation is being established. Employees waive any claims for damages should Medicare deny coverage for the failure to establish a set aside allocation.

4. **Employees' Cooperation**. Employees agree to cooperate with Employers regarding any pending or subsequently filed litigation, claims, regulatory actions or other disputed items involving Employers that relate to matters within the knowledge or responsibility of Employees during their employment. Without limiting the foregoing, Employees agree (i) to meet with Employers' representatives, its counsel or other designees at mutually convenient times and places with respect to any items within the scope of this provision, (ii) to provide truthful testimony regarding same to any court, agency or other adjudicatory body, and (iii) to provide Employers with notice of contact by any adverse party. Employees further agree that they will not assist any such adverse party or such adverse party's representatives except as may be required by law.

5. **No Reapply, No Rehire**. Employees agree not to apply for employment with Employers and any of their successors or entities with which they merge or consolidate. Should Employees violate this section, Employees agree that Employers and any of their successors or entities with which they merge or consolidate shall have no obligation to consider Employees for employment.

6. **Counsel**. All parties to this Agreement were represented by counsel concerning the terms and execution of this Agreement.

7. **No Liability**. Nothing contained in this Agreement is intended to constitute an admission by any party to this Agreement of liability of any nature whatsoever to any other party and each party expressly denies any such liability.

8. **Construction**. The parties to this Agreement have cooperated in the preparation of this Agreement. Hence, in any construction to be made of this Agreement, the Agreement shall not be construed against any of the parties.

9. **Remedies After Breach**. In the event that Employees breach any material term of this Agreement as determined by the Court, Employers shall be entitled, in addition to any other remedy available at law or in equity, to repayment of all money paid to Employees

4

9673680.1

hereunder. The amount specified shall not be construed as a penalty, but shall be considered liquidated damages.

10. **Costs of Action**.  In the event that any party to this Agreement brings any action or proceeding in connection with this Agreement, the prevailing party in such action shall be entitled to recover, as part of such action or proceeding, its costs therein, including reasonable attorney fees.

11. **Counterparts**.  This Agreement may be executed by the parties in any number of counterparts, each of which shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument. The execution of the counterparts shall not be deemed to constitute delivery of this Agreement by a party until both of the parties have executed and delivered their respective counterparts.

12. **Headings**.  This section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

13. **Severability**.  It is the intention of the parties that the terms and provisions of this Agreement be construed to be separable and severable. If any term or provision of this Agreement shall be held void, invalid, unenforceable or in conflict with any applicable law, all of the other terms and provisions of this Agreement shall remain valid and fully enforceable.

14. **Entire Agreement; Amendments**.  This Agreement embodies the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, with respect thereof. This Agreement may not be changed orally, but may be amended, superseded, cancelled, renewed, or extended, and the terms hereof may be waived, only by an instrument in writing signed by each of the parties, or, in the case of a waiver, signed by the party against whom enforcement of such waiver is being sought.

15. **Governing Law; Jurisdiction**.  This Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of Ohio, and the parties hereby confer jurisdiction upon the United States District Court for the Southern District of Ohio exclusively to determine any dispute arising out of or related to this Agreement, or the breach hereof.

16. **Acknowledgement**.  Employees acknowledge that they have carefully read all of the terms of this Agreement, that such terms have been fully explained to them and that they understand the consequences of each and every term, that they have had sufficient time and an opportunity to consult with their own legal advisor prior to signing this Agreement, and that they specifically understand that by signing this Agreement they are giving up any and all rights they may have against Employers under all laws and legal theories with respect to events occurring on or before this date.

ECHO 24, INC.                                    Date  11/30/2017

By: _____

Its: __President_____

_____      11/30/2017
TONY GUNTER                        Date

_Joseph A. Freitas Jr_____          11/30/2017
JOSEPH FREITAS                      Date

_Jacob Michael Rankin_____          11/30/2017

_____
JACOB RANKIN                        Date